**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------

In re

    Calpine Corporation, et al.,

                Debtors.

Chapter 11

Case No. 05-60200 (BRL)

Jointly Administered

-------------------------------------------------------------

Calpine Corporation, et al.,
                Plaintiffs,
     v.

Nevada Power Company,
                Defendant

Adv. Pro. No. 06-1683 (BRL)

-------------------------------------------------------------

## MEMORANDUM DECISION STAYING LITIGATION

Calpine Corporation ("Calpine") and several of its affiliates (together with Calpine, the "Debtors") seek entry of an order for an extension of the automatic stay to the prosecution of an action pending in the District of Nevada, *Nevada Power Company v. Calpine Corporation, Moapa Energy Center, LLC, Fireman's Insurance Company, and Does I-X*, (the "Nevada Litigation"), against a co-defendant, Fireman's Fund Insurance Company (Fireman's), pursuant to section 362 of title 11 of the United States Code (the "Bankruptcy Code"), or, in the alternative, enjoining the continuation of the Nevada Litigation under section 105 of the Bankruptcy Code until the Debtors emerge from their Chapter 11 proceedings. The Official Committee of Unsecured Creditors' of Calpine (the "Committee") and Fireman's both move to intervene in this adversary proceeding.

**Background**

On December 20, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for relief

1

under chapter 11 of the Bankruptcy Code. The Debtors and certain non-debtor affiliates (the "Company") are involved in the development, construction, ownership and operation of power generation facilities and the sale of electricity and its by-product, thermal energy, primarily in the form of steam, predominantly in North America. The Company operates the largest fleet of natural gas- fired power plants in North America and has ownership interests in, and operates, gas- fired power generation and cogeneration facilities, pipelines, geothermal steam fields and geothermal power generation facilities. The Company owns, leases and operates power plants throughout the United States and in Canada. The Company also has interests in several plants under active construction. The Company markets electricity produced by its generating facilities to utilities and other third party purchasers while thermal energy produced by the gas-fired power cogeneration facilities is sold primarily to industrial users. The Company offers to third parties energy procurement, liquidation and risk management services, combustion turbine component parts, engineering and repair and maintenance services.

**The Nevada Litigation**

The Nevada Litigation arises out of a series of agreements between Nevada Power and Calpine and Moapa Energy Center LLC ("Moapa"), a Calpine subsidiary, involving the Centennial Project in Las Vegas, Nevada. The Centennial Project is intended to provide for the transmission of electric power to markets in Nevada and the Western United States from power plants that are currently under construction or planned to be constructed.

Nevada Power alleges that as a condition for participating in the project, it required power generators to enter into contracts called Transmission Service Agreements ("TSA").

Calpine entered into two TSAs with Nevada Power. In the TSAs, Calpine agreed to use the project's energy transmission lines for an extended period of time, and pay Nevada Power for the use of those lines. One provision of the TSAs required Calpine to post security to guarantee those obligations to Nevada Power.

In 2000-2001, a series of disputes arose between Nevada Power and various power generators, including Calpine, which resulted in a global settlement agreement. In that settlement, Nevada Power terminated one of Calpine's TSAs, continued its other TSA, and required Calpine to post a $33 million bond for the Centennial TSA. The bond became effective on July 16, 2001 and terminated by its own terms on May 1, 2004. Fireman's served as surety for Calpine's obligations under the remaining TSA and guaranteed Calpine's performance. Specifically, Fireman's agreed that it would pay Nevada Power's damages up to the bond's value if Calpine defaulted on its obligations to Nevada Power.

Calpine did not renew the bond when it terminated in May 2004. On May 12, 2004, Fireman's filed an action against Nevada Power in the Superior Court of the State of California for the County of Marin, seeking a declaratory judgment that it had no liability under the Surety Bond because allegedly no default had occurred during the term of the Surety Bond. The action was dismissed on September 3, 2004, for lack of personal jurisdiction over Nevada Power.

On September 30, 2004, Nevada Power filed suit in Nevada state court against Calpine, Moapa and Fireman's for damages for breach of contract, breach of the covenant of good faith and fair dealing, specific performance and declaratory relief. Fireman's then removed this action to the United States District Court for the District of Nevada. On May 27, 2005, in

3

response to a motion to dismiss filed by Fireman's, the District Court dismissed the Complaint. On June 10, 2005, Nevada Power filed a motion to amend its complaint and for reconsideration. On November 17, 2005, the District Court granted Nevada Power's motion to amend its complaint and for reconsideration. On December 8, 2005, Nevada's Amended Complaint as to Fireman's Fund, which had been submitted on June 10, 2005, was accepted for filing.

On February 10, 2006, Fireman's filed a motion to dismiss Nevada Power's amended complaint. On April 14, 2006, Fireman's moved for a stay of the action pending resolution of its motion to dismiss. On June 1, 2006, the District Court denied Fireman's motion to dismiss the amended complaint. Fireman's filed an answer to Nevada Power's complaint and amended complaint on June 16, 2006. The parties submitted a Stipulated Discovery Plan and Scheduling Order that was approved by the District Court on June 27, 2006. The discovery cut-off date has now been set for March 12, 2007 with a pretrial order to be filed by May 14, 2007.

On August 4, 2006, after Nevada Power sent discovery requests to Fireman's, Calpine filed the present Motion. The lawsuit against Calpine and Moapa is subject to the automatic stay and the Debtors now seek to extend the stay to the claims against Fireman's.

Fireman's has filed proofs of claim for the amount of its potential liability on the surety bond against Calpine Energy Services, LP; Moapa; Calpine; Calpine Power Services, Inc; and Calpine Eastern Corporation. Nevada Power also filed a proof of claim in the amount of $33 million against Calpine.

**Discussion**

*Intervention*

At the hearing today, I granted the motions to intervene and join issue, pursuant to the Second Circuit Court of Appeals decision in *Term Loan Holder Committee v. Ozer Group, LLC (In re Caldor Corp.)*, 303 F.3d 161, 176 (2d Cir. 2002) which found that pursuant to section 1109(b) of the Bankruptcy Code parties in interest have "an unconditional right to intervene" in adversary proceedings under chapter 11, pursuant to rule 24(a)[1] of the Federal Rules of Civil Procedure. *See also In re Smart World Technologies, LLC,* 423 F.3d 166, 181 (2d Cir. 2005).

*Stay of the Nevada Litigation*

To obtain a preliminary injunction in a bankruptcy proceeding, the moving party must demonstrate both irreparable harm and either a likelihood of success on the merits or a sufficiently serious question regarding the merits to make it a fair ground for litigation, with the balance of the hardships tipping decidedly in the movant's favor. *See In re Alert Holdings, Inc. v. Interstate Protective Services,* 148 B.R. 194, 200 (Bankr. S.D.N.Y. 1992) *citing Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 972 (2d Cir. 1989); *Kaplan v. Bd. of Educ.*, 759 F.2d 256, 259 (2d Cir. 1985); *Local 553, Transport Workers v. Eastern Air Lines, Inc.*, 695 F.2d 668, 675 n. 5 (2d Cir. 1982). The case law in this district, however, has established a limited exception to the irreparable harm requirement for issuance of a preliminary injunction in the bankruptcy context where

---

[1] Fed.R.Civ.P. 24(a)(1) provides that upon timely application, "anyone shall be permitted to intervene in an action ⋯ when a statute of the United States confers an unconditional right to intervene."

the action to be enjoined is one that threatens the reorganization process or which would impair the court's jurisdiction with respect to a case before it. *Alert Holdings*, 148 B.R. at 199 (citations omitted). Where there is a showing that the action sought to be enjoined would burden, delay or otherwise impede the reorganization proceedings or if the stay is necessary to preserve or protect the debtor's estate or reorganization prospects, the Bankruptcy Court may issue injunctive relief. *Id.*

In addition, section 105 of the Bankruptcy Code provides bankruptcy courts with broad discretion to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105. Although stays under section 362(a) of the Bankruptcy Code generally apply only to bar proceedings against the debtor, it is well settled that bankruptcy courts may extend the automatic stay to "enjoin suits by third parties against third parties if they threaten to thwart or frustrate the debtor's reorganization efforts," *see In re Adelphia Communications Corp.* 298 B.R. 49, 54 (S.D.N.Y. 2003) *quoting In re Granite Partners, L.P.,* 194 B.R. 318, 337 (Bankr. S.D.N.Y. 1996); *see also Teachers Ins. & Annuity Ass'n v. Butler,* 803 F.2d 61, 65 (2d Cir.1986) (affirming bankruptcy court's order extending stay to non-debtors because "it contributes to the debtor's efforts to achieve rehabilitation."); *MacArthur Co. v. Johns-Manville Corp.,* 837 F.2d 89, 93 (2d Cir.1988); *Gucci America, Inc. v. Duty Free Apparel, Ltd.,* 328 F.Supp.2d 439, 441-442 (S.D.N.Y. 2004) (where a particular action against the non-debtor party threatens to adversely affect the debtor's reorganization efforts, courts are willing to extend section 362(a)'s coverage accordingly. ); *In re Chateaugay,* 93 B.R. 26, 30 (S.D.N.Y.1988) (acknowledging bankruptcy court's authority to extend a stay pursuant to its injunctive power under section 105, despite the inapplicability of the automatic stay provision under 11 U.S.C. § 362); *In re Neuman,* 71 B.R. 567, 571 (S.D.N.Y.1987) (same); *In*

6

re Ionosphere Clubs, Inc. 111 B.R. 423, 434 (Bankr. S.D.N.Y. 1990), or when "a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." See Queenie, Ltd. v. Nygard Int'l, 321 F.3d 282, 287 (2d Cir.2003); In re Gucci, 126 F.3d 380, 392 (2d Cir. 1997)("an action taken against a non-debtor which would inevitably have an adverse impact upon property of the estate must be barred by the automatic stay provision."); see also A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir.), cert. denied, 479 U.S. 876 (1986) (Section 362(a)(1) applies to non-bankruptcy parties "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment against the debtor); In re W.R. Grace & Co. 2004 WL 954772, 2 (Bankr.D.Del. April 29, 2004) ("the automatic stay has generally been extended to the unusual situation where an action against one party is essentially an action against the bankruptcy debtor, as in the case where a third-party is entitled to indemnification by the debtor for any judgment taken against it."); In re United Health Care Org., 210 B.R. 228, 232 (S.D.N.Y. 1997) ("One example of a situation where such an injunction would be permitted would be a suit against a third party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against it in the case."); Lomas Financial Corp. v. Northern Trust Co. (In re Lomas Financial Corp.), 117 B.R. 64, 68 (S.D.N.Y. 1990). Additionally, courts apply section 105 of the Bankruptcy Code to enjoin litigation against non-debtors when an adverse judgment in that litigation will collaterally estop the debtor in subsequent litigation. See Barney's, Inc. v. Isetan Co. (In re Barney's, Inc.), 200 B.R. 527, 531 (Bankr.S.D.N.Y.1996); In re Lion Capital Group, 44 B.R. 690, 702-03 (Bankr. S.D.N.Y. 1984); Johns-Manville Corp. v. Asbestos Litig. Group (In re Johns-Manville Corp.), 26 B.R. 420,

429-30 (Bankr. S.D.N.Y. 1983), *aff'd*, 40 B.R. 219 (S.D.N.Y. 1984), *rev'd in part on other grounds,* 41 B.R. 926 (S.D.N.Y. 1984); *see also In re Lomas Financial Corp.,* 117 B.R. at 66-67.

Section 105 injunctions are granted in these circumstances because one of the overriding purposes of the Bankruptcy Code is to provide debtors with breathing room from their creditors to increase the chances of a successful reorganization. Because non-debtors do not fall within the protection of the automatic stay, at times section 105 must be invoked on their behalf to prevent creditors from frustrating an otherwise-viable reorganization effort by pursuing actions against them. In other words, "Congressional intent to provide relief to debtors would be frustrated by permitting indirectly what is expressly prohibited in the Code." *In re United Health Care Organization,* 210 B.R. at 233 *quoting Variable-Parameter Fixture Development Corp. v. Morpheus Lights, Inc.,* 945 F.Supp. 603, 608 (S.D.N.Y.1996).

When the stay does not apply automatically, the debtor then bears the burden of demonstrating that circumstances warrant extending the stay. *In re Third Eighty-Ninth Assocs.,* 138 B.R. 144, 146 (S.D.N.Y.1992).

Based upon all of the affidavits and pleadings submitted, and the evidence presented at the hearing, it is clear that the liability of Fireman's is contingent on Calpine's liability to Nevada Power. The claims against Fireman's are based on the identical facts as Nevada Power's claims against Calpine and are inextricably tied to those claims. If the Nevada Litigation proceeds against Fireman's, issues regarding Calpine's liability, its defenses and any damages that may be awarded, will be determined in Calpine's absence exposing Calpine to a significant risk of collateral estoppel, stare decisis and evidentiary prejudice. If judgment is entered against Fireman's, Calpine must indemnify it

thereby having an adverse impact upon property of the Debtors' estates. Moreover, continuation of the case will distract key personnel from Calpine's reorganization efforts including Calpine's sole remaining transmission engineer.

Nevada Power seems to argue that the Calpine's liability is already established and that the claims against Fireman's are therefore easily determined in a motion for summary judgment. First, Calpine's alleged liability has not been established. And second, regardless of the posture of the Nevada Litigation, Fireman's must still present all of its defenses requiring the time and attention of Calpine and its related exposure. Indeed, Fireman's cannot defend itself in the Nevada Litigation without the active and essential participation of Calpine through its key reorganization personnel.

Based on the foregoing, I find that Calpine has made the necessary showing to enjoin the Nevada Litigation. In light of the identity of interest between Calpine and Fireman's, Calpine will suffer irreparable harm if the Nevada Litigation continues through the risk of collateral estoppel and evidentiary prejudice, a drain on its estate due to its indemnification obligations to Fireman's and a significant burden and distraction of key employees from its restructuring efforts.

The probability of success on the merits element of the test for granting a preliminary injunction to preserve the reorganization effort is generally recognized as involving an analysis of the likelihood that the Debtor will confirm a plan of reorganization. *In re Eagle-Picher Industries, Inc.*, 963 F.2d 855 (6th Cir. 1992). There is really no dispute that there is a strong likelihood that the Debtors can successfully reorganize and this court has already determined that in an earlier adversary proceeding in this case. *See Hawaii Structural Ironworkers Pension Trust Fund v. Johnson* (*In re Calpine*), 05-60200.

Moreover, the balance of the equities weigh decisively in Calpine's favor. The risk of collateral estoppel in a $33 million dollar lawsuit, depletion of estate assets and distraction of key employees to the urgent task of reorganization outweigh any purported prejudice to Nevada Power. By contrast, a stay of the Nevada Litigation will neither diminish the potential liability of Calpine and Fireman's nor complicate Nevada Power's evidentiary burdens. As with all of the claims filed against the Debtors' estates, Nevada Powers' claims will be dealt with in due course.

Accordingly, the motion for a stay of the Nevada Litigation and the motions to intervene are granted.

SUBMIT AN ORDER CONSISTENT WITH THIS DECISION.

Dated: New York, New York
       October 25, 2006

/s/ Burton R. Lifland
United States Bankruptcy Court